IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ELIZABETH VALDEZ KYNE, CHAD KRUZIC, and ADAM BOROWIEC, on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br><br>   vs.<br><br>THE RITZ-CARLTON HOTEL COMPANY, L.L.C., dba THE RITZ-CARLTON, KAPALUA,<br><br>        Defendant. | Civ. No. 08-00530 ACK-RLP |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS, GRANTING DEFENDANT'S REQUEST TO STAY PROCEEDINGS AS MODIFIED, AND ADMINISTRATIVELY CLOSING THIS CASE

### FACTUAL BACKGROUND[1]

       Plaintiffs Elizabeth Valdez Kyne, Chad Kruzic, and Adam Borowiec ("Plaintiffs"), brought suit on behalf of a similarly situated class against the Ritz-Carlton Hotel Company, L.L.C., d/b/a the Ritz-Carlton, Kapalua ("Defendant" or "Hotel"). Am. Compl. ¶¶ 3-6. Plaintiffs have all worked as food and beverage servers for at the Ritz-Carlton, Kapalua, in Maui, Hawaii. Id. ¶ 3.

       Plaintiffs' Amended Complaint alleges that the Ritz-

---

[1] The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

Carlton provides food and beverage services throughout the Hotel, including in its banquet department, its restaurants, and through room service. <u>Id.</u> ¶ 5. Plaintiffs allege that Defendant has added a preset service charge to customers' bills for food and beverage served at the Hotel, but that Defendant has not remitted the total proceeds of the service charge as tip income to the employees who serve the food and beverages. <u>Id.</u> ¶¶ 6-9. Instead, Plaintiffs allege that Defendant has had a policy and practice of retaining for themselves a portion of these service charges (or using it to pay managers or other non-tipped employees who do not serve food and beverages), without disclosing to the Hotel's customers that the services charges are not remitted in full to the employees who serve the food and beverages.[2] <u>Id.</u> ¶¶ 8-9. Plaintiffs assert that therefore customers are misled into believing the entire service charge is distributed to the employees that serve them, and as a result, customers who would otherwise leave an additional gratuity do not do so. <u>Id.</u> ¶ 10.

Plaintiffs' Amended Complaint asserts five counts. In Count I, Plaintiffs allege that Defendant's conduct violates Hawaii Revised Statutes ("H.R.S.") § 481B-14, and that pursuant

---

[2] The Collective Bargaining Agreement ("CBA") between the Hotel and its employees provided that employees shall receive at least 93% of the guaranteed service charge. Def.'s Response to Pls.' CSF Ex. A, § 7.h. There does not appear to be a dispute that Defendant kept 7% of service charges it imposed.

to § 481B-4, such violation constitutes an unfair method of competition or unfair and deceptive act or practice within the meaning of H.R.S. § 480-2.  In Count II, Plaintiffs allege that Defendant's conduct constitutes unlawful intentional interference with contractual and/or advantageous relations.  In Count III, Plaintiffs allege that Defendant's conduct constitutes a breach of two implied contracts.  In Count IV, Plaintiffs allege that Defendant has been unjustly enriched at Plaintiffs' expense under state common law.  In Count V, Plaintiffs allege that as a result of Defendant's conduct, they have been deprived of income that constitutes wages, which is actionable under H.R.S. §§ 388-6, 388-10, and 388-11.

## **PROCEDURAL BACKGROUND**

On November 24, 2008, Plaintiffs filed a Class Action Complaint.  Doc. No. 1.  There were a number of similar cases filed in this Court, and on February 11, 2009, Plaintiffs moved to consolidate or alternatively for assignment of all the related cases to one judge pursuant to Local Rule 40.2.[3/]  Doc. No. 25.

_____

[3/]There are at least seven other similar cases that food and beverage service employees have filed against their employers in this District Court between November 21, 2008, and May 13, 2010. These actions are: Davis v. Four Seasons Hotel, Ltd., Civ. No. 08-00525 HG-BMK (D. Haw. Nov. 21, 2008) (hereafter "Davis I"); Apana v. Fairmont Hotels & Resorts (U.S.) Inc., Civ. No. 08-00528 JMS-LEK (D. Haw. Nov. 24, 2008); Villon v. Marriott Hotel Servs., Inc., Civ. No. 08-00529 LEK-RLP (D. Haw. Nov. 24, 2008); Wadsworth v. KSL Grand Wailea Resort, Inc., Civ. No. 08-00527 ACK-LEK (D. Haw. Nov. 24, 2008); Lara v. Renaissance Hotel Operating Co., Civ. No. 08-00560 LEK-RLP (D. Haw. Dec. 10, 2008); Rodriguez v. Starwood Hotels & Resorts Worldwide, Inc., 09-00016

On April 8, 2009, this Court adopted the Magistrate Judge's Findings and Recommendation that the similar cases not be consolidated. 2009 WL 975753 (Doc. No. 31).[4/]

On July 9, 2009, the Court stayed this case in light of Judge Gillmor's certification to the Hawaii Supreme Court of a question of law that was also important to the instant case.[5/] See Doc. No. 42. The Hawaii Supreme Court answered the certified question on March 29, 2010. See Davis v. Four Seasons Hotel Ltd., 228 P.3d 303 (Haw. 2010) (hereafter "Davis II"). Accordingly, on April 19, 2010, Plaintiffs filed a motion to lift the stay and a motion to file an amended complaint. Doc. Nos. 44 & 45. The Magistrate Judge granted both motions on June 22, 2010. Doc. No. 54. Plaintiffs filed their Amended Complaint on

_____

LEK-RLP (D. Haw. Jan. 9, 2009); and Flynn v. Fairmont Hotels & Resorts, Inc., Civ. No. 10-00285 DAE-LEK (D. Haw. May 13, 2010).

[4/]In that Findings and Recommendation, the magistrate judge found that reassignment to the same district judge was not warranted, but that the cases should be reassigned to one magistrate judge for more efficient case management. See Doc. No. 29.

[5/]Judge Gillmor certified the following question:

Where plaintiff banquet server employees allege that their employer violated the notice provision of H.R.S. § 481B-14 by not clearly disclosing to purchasers that a portion of a service charge was used to pay expenses other than wages and tips of employees, and where the plaintiff banquet server employees do not plead the existence of competition or an effect thereon, do the plaintiff banquet server employees have standing under H.R.S. § 480-2(e) to bring a claim for damages against their employer?

See Davis I, Civ. No. 08-00525 HG-LEK, Doc. No. 75.

4

June 28, 2010.  Doc. No. 56.

Meanwhile, on May 11, 2011, Plaintiffs filed a Motion to Certify Class.  Doc. No. 76.  On July 18, 2011, the Court adopted the Magistrate Judge's Findings and Recommendation that the Court grant Plaintiffs' motion and certify the class as "all non-managerial food and beverage service employees who, since November 24, 2002, have worked at banquets, functions, small parties, room service, and other events at the Ritz-Carlton, Kapalua, where a service charge was imposed and where a part of that service charge was kept by the Defendant without adequate disclosure to customers."  Doc. No. 91; 2011 WL 2940444 (Doc. No. 93).

On May 11, 2011, Defendant filed a Motion to Dismiss Plaintiffs' Amended Class Action Complaint ("Defendant's Motion to Dismiss").  Doc. No. 81.  The Motion was accompanied by a supporting memorandum ("Def.'s MTD Mem.").  <u>Id.</u>  Plaintiffs filed an opposition on October 26, 2011 ("Pls.' Opp'n").  Doc. No. 100.  On November 2, 2011, Defendant filed a reply ("Def.'s Reply").  Doc. No. 104.

Plaintiffs filed a Motion for Partial Summary Judgment on May 11, 2011 ("Plaintiffs' Motion for Summary Judgment").  Doc. No. 78.  The Motion was accompanied by a supporting memorandum ("Pls.' MSJ Mem.") and a concise statement of facts ("Pls.' CSF").  Doc. Nos. 79 & 80.  On October 26, 2011,

Defendant filed an opposition ("Def.'s Opp'n") and a response to
Plaintiffs' CSF ("Def.'s Response to Pls.' CSF").  Doc. Nos. 101
& 102.  Plaintiffs filed a reply on November 2, 2011 ("Pls.'
Reply").  Doc. No. 103.

On November 9, 2011, Defendant filed a supplement to
its Motion to Dismiss, attaching a copy of the Hawaii Supreme
Court's order on the question certified to it by Judge Kobayashi
in <u>Villon v. Marriot Hotel Services, Inc.</u>, CV-08-00529 LEK-RLP,
Doc. No. 130 (Oct. 12, 2011), and <u>Rodriquez v. Starwood Hotels &
Resorts Worldwide, Inc.</u>, CV-09-00016 LEK-RLP, Doc. No. 139 (Oct.
12, 2011).  Doc. No. 105 Ex. A.

On November 16, 2011, the Court held a hearing on
Defendant's request to stay proceedings, Plaintiffs' Motion for
Partial Summary Judgment, and Defendant's Motion to Dismiss.[6]
The Court will address Plaintiffs' motion in a separate order.

### <u>STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) ("Rule
12(b)(6)") permits dismissal of a complaint that fails "to state
a claim upon which relief can be granted."  Under Rule 12(b)(6),

---

[6] Plaintiffs' counsel, who reside in Boston, requested that
the hearing be continued from October until November 14, 2011, to
allow the case to be heard on the same day as <u>Wadsworth</u>, Civ. No.
08-00527 ACK-RLP, a case in which the parties are represented by
the same counsel as in this case.  <u>See</u> Doc. No. 96.  The Court
found it advisable to hold the hearings on different days, but
rescheduled the hearing for November 16, 2011, to accommodate
Plaintiffs' counsel and their travel needs.  <u>See</u> Doc. No. 95.

review is generally limited to the contents of the complaint.
Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.
2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir.
1996). Courts may also "consider certain materials—documents
attached to the complaint, documents incorporated by reference in
the complaint, or matters of judicial notice—without converting
the motion to dismiss into a motion for summary judgment."
United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).
Documents whose contents are alleged in a complaint and whose
authenticity is not questioned by any party may also be
considered in ruling on a Rule 12(b)(6) motion to dismiss. See
Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), overruled
on other grounds by Galbraith v. County of Santa Clara, 307 F.3d
1119 (9th Cir. 2002). If a court converts a motion to dismiss
into a motion for summary judgment, the court must give the
parties notice and a reasonable opportunity to supplement the
record. Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1408 (9th Cir.
1995).

On a Rule 12(b)(6) motion to dismiss, all allegations
of material fact are taken as true and construed in the light
most favorable to the nonmoving party. Fed'n of African Am.
Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir.
1996). However, conclusory allegations of law, unwarranted
deductions of fact, and unreasonable inferences are insufficient

7

to defeat a motion to dismiss.  See <u>Sprewell</u>, 266 F.3d at 988;

<u>Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of</u>

<u>Psychology</u>, 228 F.3d 1043, 1049 (9th Cir. 2000); <u>In re Syntex</u>

<u>Corp. Sec. Litig.</u>, 95 F.3d 922, 926 (9th Cir. 1996).  Moreover,

the court need not accept as true allegations that contradict

matters properly subject to judicial notice or allegations

contradicting the exhibits attached to the complaint.  <u>Sprewell</u>,

266 F.3d at 988.

     In summary, to survive a Rule 12(b)(6) motion to

dismiss, "[f]actual allegations must be enough to raise a right

to relief above the speculative level . . . on the assumption

that all the allegations in the complaint are true (even if

doubtful in fact)."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

555 (2007) (internal citations and quotations omitted).  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations . . . a plaintiff's obligation

to provide the 'grounds' of his 'entitlement to relief' requires

more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do."  <u>Id.</u> (internal

citations and quotations omitted).  Dismissal is appropriate

under Rule 12(b)(6) if the facts alleged do not state a claim

that is "plausible on its face."  <u>Id.</u> at 570.  "Determining

whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense."
Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (citation
omitted). "[W]here the well-pleaded facts do not permit the
court to infer more than the mere possibility of misconduct, the
complaint has alleged—but it has not 'show[n]'—'that the pleader
is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

        "Dismissal without leave to amend is improper unless it
is clear that the complaint could not be saved by any amendment."
Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009)
(internal quotation marks omitted). "But courts have discretion
to deny leave to amend a complaint for futility, and futility
includes the inevitability of a claim's defeat on summary
judgment." Johnson v. Am. Airlines, Inc., 834 F.2d 721, 724 (9th
Cir.1987) (citations and internal quotation marks omitted).

## DISCUSSION

        The Court will first address Defendant's request that
this Court stay proceedings in this case while the Hawaii Supreme
Court considers a certified question in a similar case. The
Court will then address Defendant's Motion to Dismiss Plaintiffs'
Amended Complaint.

## I.        Defendant's Request to Stay Proceedings

        On May 11, 2010, in alternative to its Motion to
Dismiss, Defendant asked this Court to certify the following
question to the Hawaii Supreme Court: "May employees use H.R.S.

§[ ]388-6 to seek damages for alleged violations of the obligations created by H.R.S. §[]481B-14 when the employees have not stated a claim under H.R.S. §[]481B-14?"  Def.'s MTD Mem. at 24.

Subsequently, on October 12, 2011, Judge Kobayashi certified three questions to the Hawaii Supreme Court in two similar cases, Villon v. Marriot Hotel Services, Inc., CV-08-00529 LEK-RLP, Doc. No. 130 (Oct. 12, 2011), and Rodriguez v. Starwood Hotels & Resorts Worldwide, Inc., CV-09-00016 LEK-RLP, Doc. No. 139 (Oct. 12, 2011).  As relevant here, Judge Kobayashi certified the following question:

> May food or beverage service employees of a
> hotel or restaurant bring a claim against
> their employer based on alleged violation of
> Haw. Rev. Stat. § 481B-14 by invoking Haw.
> Rev. Stat. §§ 388-6, 388-10, and 388-11 and
> without invoking Haw. Rev. Stat. §§ 480-2 or
> 480-13?[7]

Villon, CV-08-00529 LEK-RLP, Doc. No. 130; Rodriguez, CV-09-00016

---

[7]Judge Kobayashi also certified the following questions:

(1) "If food or beverage service employees of a hotel or restaurant are entitled to enforce Haw. Rev. Stat. § 481B-14 through Haw. Rev. Stat. §§ 388-6, 388-10, and 388-11, what statute of limitations applies?" and (2) "May food and beverage service employees of a hotel or restaurant bring a claim under Haw. Rev. Stat. § 480-2(e) for an alleged violation of Haw. Rev. Stat. § 481B-14, where those employees have alleged that their employer's conduct has caused them injury that resulted from an unfair method of competition?"

The Hawaii Supreme Court declined to accept these two questions. See Def.'s Supplemental Filing, Doc. No. 105 Ex. A.

LEK-RLP, Doc. No. 139.

On November 8, 2011, the Hawaii Supreme Court issued an "Order on Certified Question," ordering the parties to submit briefing with respect to this question, but stated that it was ordering such action "without conclusively determining whether this court will answer" the certified question. See Def.'s Supplemental Filing, Doc. No. 105 Ex. A.

Defendant acknowledges that Judge Kobayashi's certification renders Defendant's request for this Court to certify the question moot. Def.'s Opp'n at 21. Defendant requests, however, that the Court administratively close this case pending a decision by the Hawaii Supreme Court. Id. Defendant asserts that proceeding with the case at this time would be an inefficient use of judicial resources. Id. at 22. Defendant further asserts that because Plaintiffs' counsel are also the counsel for the plaintiffs in Villon, they will have a full opportunity to brief the issue before the Hawaii Supreme Court, and that Plaintiffs will not be prejudiced because "they will have the benefit of the Hawaii Supreme Court's opinion on this critical issue." Id.

Plaintiffs oppose Defendant's request, asserting that a stay "would impede the orderly course of justice by thwarting the expedient resolution of this case." Pls.' Reply at 15. Specifically, Plaintiffs point out that this case is three years

old and has already been stayed once pending certification of another question to the Hawaii Supreme Court.  <u>Id.</u>

A district court has discretion to certify a question to a state supreme court.  <u>Riordan v. State Farm Mut. Auto Ins. Co.</u>, 589 F.3d 999, 1009 (9th Cir. 2009).  The Ninth Circuit has explained that it "request[s] certification not because a difficult legal issue is presented but because of deference to the state court on significant state law matters," and that it has "an obligation to consider whether novel state law questions should be certified."  <u>Kremen v. Cohen</u>, 325 F.3d 1035, 1037-38 (9th Cir. 2003).  The Supreme Court has noted that certification does, "in the long run save time, energy, and resources and helps build a cooperative judicial federalism."  <u>Lehman Bros. v. Schein</u>, 416 U.S. 386, 390-91 (1974).

In <u>Bellotti v. Baird</u>, 428 U.S. 132 (1976), the Supreme Court held that the district court should have certified questions concerning the meaning of a state statute where potential interpretations of the statute would have avoided or substantially modified the constitutional challenge at issue. <u>Id.</u> at 146-51 ("In deciding this case, we need go no further than the claim that the District Court should have abstained pending construction of the statute by Massachusetts courts.").  The Supreme Court has also admonished both the Ninth Circuit and the district court for failure to certify a novel state law question.

See <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 76-77 (1997) ("Both lower federal courts in this case refused to invite the aid of the Arizona Supreme Court because they found the language of Article XXVIII [of the Arizona Constitution] 'plain.' . . . A more cautious approach was in order."). With this admonishment in mind, the Ninth Circuit has certified a state law question to the Washington Supreme Court when the parties unanimously opposed certification. See <u>Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1</u>, 294 F.3d 1085, 1086 (9th Cir. 2002). The Ninth Circuit has also recognized that a certified question need not raise a constitutional issue. See <u>Kremen</u>, 325 at 1038 n.1, 1042. (certifying a question related to the tort of conversion). Nonetheless, the Ninth Circuit has held that "[e]ven where state law is unclear, resort to the certification process is not obligatory." <u>Riordan</u>, 589 F.3d at 1009.

It is also within the discretion of a district court to stay proceedings in its own court. <u>Lockyer v. Mirant Corp.</u>, 398 F.3d 1098, 1109 (9th Cir. 2005). This District Court has recognized that:

> A party seeking a stay . . . 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one case be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.'

Davis I, Civ. No. 08-00525 HG-BMK, 2011 WL 5025485, at *2 (D. Haw. Oct. 20, 2011) (quoting Lockyer, 398 F.3d at 1109).

In Davis I, Civ. No. 08-00525 HG-BMK, F. --- Supp. 2d ----, 2011 WL 3841075 (D. Haw. Aug. 26, 2011), Judge Gillmor similarly considered whether to stay the case in light of the same question certified to the Hawaii Supreme Court in Villon and Rodriquez. Judge Gillmor denied the defendant's request to stay the case, determining that the case was over three years old and had already been stayed once for ten months pending the Hawaii Supreme Court's ruling on a certified question; that although the plaintiffs had previously requested certification of that question, the defendant had opposed certification and had an opportunity to submit briefing on the questions to be submitted; and that it was unclear whether the certification of the questions would have any impact on the ultimate resolution of the case. Davis I, 2011 WL 5025485, at *2. Judge Gillmor further explained that the Hawaii Supreme Court may decline the certification and that the ultimate impact of the resolution of the instant question might have was unclear. Id.

Similarly, this case is nearly three years old and has already been stayed once pending resolution of a certified question by the Hawaii Supreme Court. Since Judge Gillmor's order in Davis I, however, the Hawaii Supreme Court has ordered briefing on the question potentially dispositive of the instant

14

motion.  See Def.'s Supplement, Doc. No. 105 Ex. A.  Although
more likely now, it does remain unclear when or if the Hawaii
Supreme Court will answer the certified question because the
court expressly declined to "conclusively determine" whether it
would do so.  Id.  Also in contrast to the circumstances present
in Davis I, Defendant has not previously opposed certification of
the § 388-6 issue.  In summary, in Davis I, the plaintiffs, who
are represented by the same counsel as Plaintiffs in this case,
had requested certification to the Hawaii Supreme Court of the
issue now before the Court, and the defendant in that case had
opposed such certification;[8/] whereas, in this case, Defendant now
requests such certification and Plaintiffs oppose it.

        Significantly, neither the Court nor the parties were
able to find an appellate decision approving of a lower court
continuing with a case when a state supreme court had accepted a
certified question on an important issue of law in that case.  It
would be inefficient and a waste of resources to continue to
trial and potentially the appellate process, and then have the
Hawaii Supreme Court issue a decision inapposite to this Court's
ruling.  With this consideration in mind, and in deference to the
Hawaii Supreme Court, who has ordered briefing on the certified
question, the Court will stay the effect of the instant order,

---

[8/]The defendant in Davis I is not represented by Defendant's
counsel in this case.

and administratively close the case, pending resolution of the question certified in <u>Villon</u> and <u>Rodriguez</u>.

Defendant's request to stay this case is GRANTED as modified.

II.     **Motion to Dismiss**

Defendant moves to dismiss all counts of Plaintiffs' Amended Complaint, on the grounds that Plaintiffs' claims are preempted by Federal Labor Law and they fail to state claims upon which relief may be granted.  Def.'s MTD Mem. at 1.  The Court will first discuss preemption, followed by whether Plaintiffs' allegations state a plausible claim.

        A.      **Preemption**

Defendant argues that Plaintiffs' claims require interpretation of the terms of a collective bargaining agreement ("CBA") and therefore the claims are preempted by Section 301 of the Labor Relations Management Act, 29 U.S.C. § 185(a) ("Section 301"), and accordingly should be dismissed for lack of subject matter jurisdiction.  Def.'s MTD Mem. at 30.  Defendant also asserts that H.R.S. § 481B-14 is preempted by the National Labor Relations Act ("NLRA"), pursuant to <u>Lodge 76, International Association of Machinists v. Wisconsin Employment Relations Commission</u>, 427 U.S. 132, 140-41 (1976) ("<u>Machinists</u>"), because Congress intended to leave questions regarding the allocation of service charges under a CBA unregulated.  Def.'s MTD Mem. at 33.

**1. Section 301 Preemption**

Section 301 provides:

> Suits for violation of contracts between an
> employer and a labor organization
> representing employees in an industry
> affecting commerce as defined in this
> chapter, or between ay such labor
> organizations, may be brought in any district
> court of the United States having
> jurisdiction of the parties, without respect
> to the amount in controversy or without
> regard to the citizenship of the parties.

29 U.S.C. § 185(a). In enacting this statute, Congress charged

federal courts with a "mandate . . . to fashion a body of federal

common law to be used to address disputes arising out of labor

contracts." Allis–Chalmers Corp. v. Lueck, 471 U.S. 202, 209

(1985). Thus, "a suit in state court alleging a violation of a

provision of a labor contract must be brought under § 301 and

resolved by reference to federal law. A state rule that purports

to define the meaning or scope of a term in a contract suit is

therefore pre-empted by federal labor law." Id. at 210. The

Supreme Court has explained, however, that in order to give the

policies behind Section 301 their proper range, the pre-emptive

effect of § 301 must extend beyond suits alleging contract

violations. Id. Therefore,

> questions relating to what the parties to a
> labor agreement agreed, and what legal
> consequences were intended to flow from
> breaches of that agreement, must be resolved
> by reference to uniform federal law, whether
> such questions arise in the context of a suit
> for breach of contract or in a suit alleging

17

> liability in tort.  Any other result would
> elevate form over substance and allow parties
> to evade the requirements of § 301 by
> relabeling their contract claims as claims
> for tortious breach of contract.

Id. at 211.  The Supreme Court in Lueck was careful though to

clarify that "not every dispute concerning employment, or

tangentially involving a provision of a collective-bargaining

agreement, is pre-empted by § 301 or other provisions of the

federal labor law. . . . In extending the pre-emptive effect of

§ 301 beyond suits for breach of contract, it would be

inconsistent with congressional intent under that section to

preempt state rules that proscribe conduct, or establish rights

and obligations, independent of a labor contract."  Id. at 212.

    The Supreme Court revisited this issue just a few years

after Lueck in Lingle v. Norge Division of Magic Chef, Inc., 486

U.S. 399 (1988).  Lingle has become a touchstone in the analysis

of § 301 preemption.  There, the Supreme Court held that although

an employee was covered by a collective bargaining agreement that

provided a contractual remedy for discharge without just cause,

the employee could still maintain her state-law remedy for

retaliatory discharge.  See id. at 401.  The Supreme Court

explained that in order to resolve the plaintiff's state law

retaliatory discharge claim there was no need to interpret any

term of the collective bargaining agreement.  Id. at 407.

Therefore, the Supreme Court concluded that "the state-law remedy

[was] 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement." Id. at 407.

In practice, however, the "demarcation between preempted claims and those that survive § 301's reach is not . . . a line that lends itself to analytical precision." Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 691 (9th Cir. 2001). Nevertheless, the Ninth Circuit has established guidelines to aid in this process based upon the Supreme Court's preemption decisions. See Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1060 (9th Cir. 2007).

First, a court must determine whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. Id. at 1059–60. As a part of this analysis, the Court must consider the "legal character of a claim, as 'independent' of rights under the collective-bargaining agreement [and] not whether a grievance arising from 'precisely the same set of facts' could be pursued." Id. at 1060 (citing Livadas v. Bradshaw, 512 U.S. 107, 123 (1994)). Moreover, a defendant's reliance upon a CBA as an aspect of a defense is not enough to "inject[ ] a federal question into an action that asserts what is plainly a state-law claim." Id.

Second, even if a right exists independently of the

CBA, a court must consider whether the claim is nevertheless "substantially dependent on analysis of a collective-bargaining agreement." Id. at 1059-60. To determine whether a state law right is "substantially dependent" on the terms of a CBA, the court must examine whether a claim can be resolved by "looking to" a CBA rather than "interpreting" the CBA. Id. In Livadas, the Supreme Court made it clear that "when the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas, 512 U.S. at 124. The Ninth Circuit has also explained, as part of this analysis, if a waiver of the state law right at issue is asserted (and a waiver of that right is permissible), a court may look to a CBA to determine whether it contains a clear and unmistakable waiver of that right without triggering Section 301 preemption. See Cramer, 255 F.3d at 692. Finally, a court may look to a CBA to determine damages without triggering the need for preemption. See Lingle, 486 U.S. at 413 n. 12 ("A collective-bargaining agreement may, of course, contain information such as rate of pay . . . that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled."); Livadas, 512 U.S. at 125, ("[T]he mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim

defeated by § 301."); <u>Burnside</u>, 491 F.3d at 1073.

As Defendant recognizes, this Court previously addressed the same arguments in a similar case, <u>Wadsworth v. KSL Grand Wailea Resort, Inc.</u>, --- F. Supp. 2d ----, Civ. No. 08-00527 ACK-RLP, 2010 WL 5146521 (D. Haw. Dec. 10, 2010).  In <u>Wadsworth</u> the Court discussed Defendant's arguments in detail and concluded that, with the exception of the portion of Count III seeking recovery for an implied contract between the plaintiffs and the defendants, the same claims alleged here were not preempted by Section 301 because the claims did not involve interpretation of the CBA.[9/]  Defendant has not alleged any facts or made any arguments that distinguish Plaintiffs' claims in this case from those made by the plaintiffs in <u>Wadsworth</u>.  Thus, the Court adopts the reasoning in <u>Wadsworth</u> as its reasoning in this case, and concludes that Plaintiffs' claim for breach of an implied contract between Plaintiffs and Defendant is preempted under federal labor law, and the remainder of Plaintiffs' claims are not preempted.  <u>See</u> <u>Wadsworth</u>, 2010 WL 5146521, at *6-14. The Court will nonetheless briefly address each count.

### i.    Count I

In short, the Court concludes that Count I, Plaintiffs'

---

[9/]Defendant states that "[w]hile Defendant recognizes this Court's previous ruling in <u>Wadsworth</u> regarding preemption, Defendant wishes to preserve its argument that Plaintiffs' claims are preempted by federal labor law."  Def.'s Reply at 15.

unfair methods of competition claim, is not preempted under
Section 301 because Plaintiffs are not enforcing a right
conferred only by the CBA, but rather an independent right
conferred by state law.  Defendant makes the blanket assertion
that the Court will need to interpret the CBA in resolving this
claim.  Def.'s MTD Mem. at 31.  Resolution of Plaintiffs' state
law claim, however, is not dependent on any provision contained
in the CBA and will not require interpretation of the CBA.  See
Wadsworth, 2010 WL 5146521, at *8-9.  Therefore Count I is not
preempted by Section 301.

### ii.  Count II

In Count II, Plaintiffs assert that Defendant's conduct
constitutes unlawful intentional interference with contractual
and/or advantageous business relationships that exists between
the employees and Defendant's customers.  Am. Compl. Count II.
Again this state-law claim is independent of any right conferred
by the CBA.  The CBA plainly does not confer or deny Plaintiffs
the right to maintain business relations with customers.  There
is no indication that any interpretation of the terms or
provision of the CBA is needed to support or defend against this
claim, and thus Count II is not preempted by Section 301.

### iii. Count III

With respect to Count III, Plaintiffs recognize this
Court has previously concluded that a claim for breach of an

implied contract between an employer and employee is preempted by Section 301.  Thus, Plaintiffs are only pursuing this count to the extent it asserts an implied contract between Defendant and its customers, with Plaintiffs as third party beneficiaries.  Pls.' Opp'n at 20 n.6.  Any such an implied contract would be independent of the CBA and not require any interpretation of the terms of the CBA.  Accordingly, Plaintiffs' breach of an implied contract claim is not preempted to the extent that they allege there is an implied contract between Defendant and its customers, to which Plaintiffs assert they are third party beneficiaries.

Defendant's Motion to Dismiss is GRANTED with respect to the portion of Count III that seeks recovery for an implied contract between Plaintiffs and Defendant.

### iv.  Count IV

Defendant asserts that Count IV, Plaintiffs' unjust enrichment claim, is preempted by Section 301 because the CBA expressly authorizes the Hotel to retain a portion of the service charges.  Def.'s MTD Mem. at 32.  Under Hawaii law, there are two required elements for an unjust enrichment claim – (1) a plaintiff must show that he or she has conferred a benefit upon the defendant and second, that the retention of that benefit was unjust.  Wadsworth, 2010 WL 5146521, at *11.  This claim is based upon § 481B-14, and although the CBA may need to be referenced regarding Defendant's defense, no interpretation of the CBA is

required and thus Count IV is not preempted by Section 301.
Moreover, there does not appear to be any dispute that the CBA
provides that the Hotel may keep 7% of the service charges.

### v.  Count V

Count V, Plaintiffs' claim pursuant to Chapter 388 is
similarly not preempted by section 301.  This claim is asserting
a state-law right that is independent of any right conferred by
the CBA.  The CBA will not need to be interpreted in resolving
this claim and thus it is not preempted by Section 301.  See id.
at *13-14.

### 2.  Machinists Preemption

In Machinists, the U.S. Supreme Court described the
circumstances in which the NLRA will preempt an otherwise valid
state law.  Under Machinists, state activity may be restricted
"on the theory that pre-emption is necessary to further
Congress['s] intent that 'the conduct involved be unregulated
because [it should be] left to be controlled by the free play of
economic forces.'"  Fort Halifax Packing Co. v. Coyne, 482 U.S.
1, 19-20 (1987) (second alteration in original) (internal
quotations omitted) (quoting Machinists, 427 U.S. at 140).  In
considering Machinists preemption, the Supreme Court has
explained that states may pass laws that set minimum labor
standards because they do not "encourage or discourage employees
in the promotion of their interests collectively," which are the

subject of federal regulation under the NLRA. <u>Metropolitan Life</u>
<u>Ins. Co. v. Massachusetts</u>, 471 U.S. 724, 755 (1985). The Court
further explained "that it cannot declare pre-empted all local
regulation that touches or concerns in any way the complex
interrelationships between employees, employers, and unions;
obviously, much of this is left to the States." <u>Id.</u> at 756-57.

As with Defendant's arguments related to Section 301
preemption, the Court considered a nearly identical argument in
<u>Wadsworth</u> that § 481B-14 is preempted by the NLRA pursuant to
<u>Machinists</u>. <u>See</u> <u>Wadsworth</u>, 2010 WL 5146521, at *17-18. The
Court adopts its reasoning in <u>Wadsworth</u> as its analysis in this
case. In sum, § 481B-14 is a law of general applicability which
creates a minimum standard related to service charges for the
entire hotel and restaurant industry. Consequently, § 481B-14
does not encourage or discourage employees in the promotion of
their interest collectively, and is not the type of statute that
the <u>Machinists</u> doctrine is intended to preempt. <u>See</u> <u>id.</u> at *16;
<u>see aslo</u> <u>Dillingham Const. N.A., Inc. v. Cnty. of Sonoma</u>, 194
F.3d 1034, 1038-40 (9th Cir. 1999) (concluding that a statute
directed at certain workers was one of general applicability
providing minimum protection for employees and thus was not
preempted under <u>Machinists</u>); <u>Nat'l Broadcasting v. Bradshaw</u>, 70
F.3d 69, 71-73 (9th Cir. 1995) (holding that a California
regulation that applied only to broadcast employees and

established an overtime minimum benefit protection was not
preempted under <u>Machinists</u>); <u>Rodriquez</u>, Civ. No. 09-00016, Doc.
No. 93, at 25-26 (explaining that in passing § 481B-14, "Hawai'i
has done nothing more than use its broad authority to pass
employment regulations to protect workers in the state," and that
the provision "in no way limits the rights of self-organization
or collective bargaining," and thus was not preempted under
<u>Machinists</u>) (internal quotations omitted).

Thus, § 481B-14 is not preempted by the <u>Machinists</u> doctrine.

### B.    Failure to State a Claim

#### 1.    Count I

Count 1 is claim for unfair methods of competition
brought pursuant to §§ 481B-14, 481B-4, and 480-2.  Defendant
asserts that Plaintiffs have not alleged facts describing the
particular competition at issue and an adverse effect on that
competition.  Def.'s MTD Mem. at 3.  Defendant asserts that
although Plaintiffs repeatedly use the word "competitive" in the
Amended Complaint, Plaintiffs fail to identify specific facts
supporting the alleged competition.  <u>Id.</u>  Defendant contends that
per the Hawaii Supreme Court's decision in <u>Davis II</u>, a plaintiff
must plead the nature of competition to state a claim under
§ 480-2, and therefore Count I does not state a claim upon which
relief may be granted.  <u>Id.</u> at 4.

Plaintiffs disagree with Defendant's characterization

of the Hawaii Supreme Court's decision in <u>Davis II</u>.  Pls.' Opp'n
at 28.  Plaintiffs assert that the Court ruled that plaintiffs
must meet the "causation requirement" of the statute, which is
similar to the requirement in the federal antitrust context, but
that the court "specifically decided <u>not</u> to adopt" the test used
in federal antitrust cases.  <u>Id.</u>  Instead, Plaintiffs assert the
Hawaii Supreme Court held that "plaintiffs' pleadings 'should
reflect the anticompetitive effect either of the violation <u>or</u> of
anticompetitive acts made possible by the violation.'"  <u>Id.</u>
Plaintiffs aver that they have met this burden, asserting that
"the negative effect on competition is <u>presumed</u> to have occurred
as a result of their employer's violation of § 481B-14."  <u>Id.</u> at
28-29.

     This Court has already rejected similar arguments made
by the plaintiffs in <u>Wadsworth</u> and adopts its analysis in
<u>Wadsworth</u> with respect to Count I in full as its analysis here.
Specifically, the Court reiterates that in <u>Davis II</u>, the Hawaii
Supreme Court explained that a plaintiff may bring a claim of
unfair methods of competition based on conduct that would also
support a claim of unfair or deceptive acts or practices, but
that in doing so, the nature of the competition must be
sufficiently alleged in the complaint.  <u>See</u> <u>Davis II</u>, 228 P.3d at
315.  The court went on to state that "the existence of the
competition is what distinguishes a claim of unfair or deceptive

acts or practices from a claim of unfair methods of competition."
Id. at 317 n. 26 (internal quotations omitted).  Thus,
"[e]mployees are required to allege how [the Hotel's] conduct
will negatively affect competition in order to recover on an
unfair methods of competition claim."  Id. at 317-18.

Hawaii's requirement that a plaintiff assert the nature
of the competition is designed to serve the same purpose as the
federal requirement that a plaintiff assert an antitrust injury.
See id. at 323 ("When examining HRS § 480-2, this court has
recognized that '[t]he genesis of Hawai'i's consumer protection
statute is in federal antitrust law,' with a shared 'concern for
the preservation of unrestrained economic competition and free
trade.'") (alterations in original) (quoting Cieri v. Leticia
Query Realty, Inc., 905 P.2d 29, 34 (Haw. 1995)).  In Davis II,
the Hawaii Supreme Court explained that it had previously "noted
that the antitrust injury should reflect the anticompetitive
effect either of the violation or of the anticompetitive acts
made possible by the violation."  Davis II, 228 P.3d at 323
(quoting Robert's Hawaii Sch. Bus, Inc. v. Laupahoehoe Transp.
Co. Inc., 982 P.2d 853, 883 n.31 (1999)).  Consequently,
Plaintiffs' argument that they do not have to plead an antitrust
injury is without merit.

Plaintiffs' allegations related to competition include
that (1) "the defendant has gained an unfair competitive

28

advantage over competitor hotels that comply with Section 481B-14 because the defendant is able to reduce the published cost of its food and beverages by improperly profiting from the imposition of a service charge that its customers would believe is used in full to pay gratuity for its food and beverage service employees"; (2) that Defendant and Plaintiffs compete for the amount customers are willing to pay for food and beverage services and therefore "[b]y not disclosing to customers that service charges are not paid in full to the wait staff employees, the defendant gains an improper competitive advantage over the plaintiffs by retaining portions of the service charge which customers believe are being provided in full to the plaintiffs as tip income"; and (3) that Plaintiffs' injuries flow from Defendant's anti-competitive acts and are "inextricably intertwined" with those acts.  Am. Compl. ¶¶ 11-13.

　　　These pleadings are insufficient because (1) although Plaintiffs allege harm to <u>competitors</u>, they have not alleged harm to <u>competition</u>; (2) merely alleging competition between hotels that results in lower prices to consumers does not give rise to antitrust injury, instead Plaintiffs must show how these lower prices are predatory; (3) Plaintiffs have offered no authority supporting their allegation that they were "competing" with Defendant for tips, that there is a competitive market for tips, that Defendant was part of this market, or that Defendant's

actions regarding service charges had a negative effect on any such market; and (4) Plaintiffs' conclusory statements that their injuries are "inextricably intertwined" with Defendant's anti-competitive acts does not establish that Defendant's actions have caused any negative effect on competition.  See <u>Wadsworth</u>, 2010 WL 5146521, at *21-26.

Consequently, Plaintiffs have not adequately alleged the nature of competition and Count I is DISMISSED without prejudice.

## 2.   Count II

In Count II, Plaintiffs assert a claim for intentional interference with contractual and/or business relations. Defendant asserts that Plaintiffs fail to state a viable claim because any business relationship could "only be by virtue of H.R.S. § 481B-14."  Def.'s MTD Mem. at 27.  Defendant also contends that Plaintiffs have not alleged a business relationship between themselves and the customers or prospective advantage or expectancy that would mature in the future.  <u>Id.</u>

Hawaii recognizes two separate torts: (1) tortious interference with contractual relations and (2) the tort of intentional or tortious interference with prospective business advantage.  <u>Meridian Mortg. Inc. v. First Hawaiian Bank</u>, 122 P.3d 1133, 1145-46 (Haw. App. 2005); <u>Robert's Hawaii Sch. Bus, Inc.</u>, 982 P.2d at 887-88.  Among other elements, tortious interference

with contractual relations requires a contract between the plaintiff and a third party and a defendant's knowledge of the contract. <u>Meridian</u>, 122 P.3d at 1143. Because Plaintiffs have not alleged the existence of a contract between themselves and customers of the Hotel, the Court will focus on a tortious interference with prospective business advantage claim.

To state a claim for tortious interference with prospective business advantage, a plaintiff must allege: (1) the existence of a valid business relationship or a prospective advantage or expectancy that is reasonably probable of maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) purposeful intent to interfere with the relationship, advantage or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages. <u>See</u> <u>id.</u> at 1145–46.

Plaintiffs have alleged that they served Defendant's customers, that the customers paid the service charge, and that the customers expected that the entirety of the service charge would be distributed to Plaintiffs. Am. Compl. ¶¶ 3, 6, 9–10. In <u>Rodriguez</u>, the Court dismissed the same claim with nearly identical factual allegations. The Court held that "[w]ith only the widest of latitudes can this Court conclude that Plaintiffs alleged in their Second Amended Complaint that the Defendant knew

31

of these relations," but that the plaintiffs had failed to allege
that the defendant had intentionally interfered with these
relations. <u>Rodriquez</u>, Civ. No. 09-000016 DAE-LEK, Doc. No. 93,
at 51 (D. Haw. Dec. 29, 2010). The Court therefore dismissed the
claim. Likewise, in <u>Davis I</u>, the Court dismissed an identical
claim because the plaintiffs had not alleged that the defendants
had intentionally interfered with any potential business
relationship between the plaintiffs and the defendants'
customers. <u>Davis I</u>, Civ. No. 08-00525 HG-BMK, Doc. No. 125, at
35-36 (D. Haw. Sept. 30, 2010). Here too, Plaintiffs have not
asserted that Defendant intentionally interfered with the
allegedly advantageous expectancy or business relationship
between Plaintiffs and Defendant's customers.

Plaintiffs have therefore failed to allege sufficient
facts to support their claim and Count II is DISMISSED without
prejudice.

### 3. Count III

Plaintiffs' third count asserts that "the defendant has
breached an implied contract with its customers that the
employees would receive this money, for which the employees are
third party beneficiaries."[10] Am. Compl. Count III.

To state a claim for breach of an implied contract, a

---

[10]As discussed above, Plaintiffs are no longer pursuing
their claim for breach of an implied contract between Plaintiffs
and Defendant. <u>See</u> Pls.' Opp'n at 20 n.6.

plaintiff must allege the breach of "an agreement in fact," which
is not expressed, but "is implied or presumed" based upon the
actions of the parties.  <u>Durette v. Aloha Plastic Recycling,
Inc.</u>, 100 P.3d 60, 74 (Haw. 2004); <u>Kemp v. State of Haw. Child
Support Enforcement Agency</u>, 141 P.3d 1014, 1038 (Haw. 2006).
"Generally, third parties do not have enforceable contract
rights.  The exception to the general rule involves <u>intended</u>
third-party beneficiaries."  <u>Ass'n of Apartment Owners of Newtown
Meadows v. Venture 15, Inc.</u>, 167 P.3d 225, 262 (Haw. 2007)
(internal quotations omitted).  Thus, "a prime requisite to the
status of 'third party beneficiary under a contract is that the
parties to the contract must have intended to benefit the third
party, who must be something more than a mere incidental
beneficiary."  <u>Id.</u> (internal quotations omitted).

Plaintiffs allege that by imposing a service charge,
Defendant and Defendant's customers had an implied contract that
the serving employees would receive the service charge.
Plaintiffs further assert that Defendant has breached this
implied contract through withholding service charges.  This claim
is unlikely to survive a summary judgment motion.  <u>See</u> <u>Davis I</u>,
Civ. No. 08-00525, Doc. No. 183, at 12-13 (granting summary
judgment for the defendant on a similar claim because the
plaintiffs were unable to point to evidence of actions taken by
the hotel and its customers that would imply a mutual intent to

form a contract requiring the hotel to remit the total service
charges to employees).  At this stage of the proceeding, however,
Plaintiffs' allegations are sufficient to state a claim upon
which relief may be granted.  See Rodriquez, Civ. No. 09-000016
DAE-LEK, Doc. No. 93, at 53 (D. Haw. Dec. 29, 2010) (determining
a similar claim with similar allegations stated a plausible
claim).

As discussed above, Count III is preempted to the
extent it asserts a breach of an implied contract between
Plaintiffs and Defendant, and therefore dismissed to that extent,
but Defendant's Motion to Dismiss Count III is DENIED to the
extent it asserts a claim for breach of an implied contract
between Defendant and Defendant's customers.

### 4.  Count IV

In Count IV, Plaintiffs assert that "the defendant's
conduct as set forth above constitutes unjust enrichment under
state common law."  Am. Compl. Count IV.  There are two elements
a plaintiff must show to establish an unjust enrichment claim
under Hawaii law.  Wadsworth, 2010 WL 5146521, at *11.  First, a
plaintiff must show that he or she has conferred a benefit upon
the defendant and second, that the retention of that benefit was
unjust.  Id.  Plaintiffs have alleged that Defendant's conduct of
assessing and partially retaining a service charge at events
where Plaintiffs serve food and beverages, which customers expect

and intend to be distributed to Plaintiffs, results in unjustly enriching Defendant.

Defendant alleges that Plaintiffs cannot show any such retention was unjust because the CBA, negotiated by Defendant and Plaintiffs' union, allows Defendant to retain a portion of service charges. The Court cannot consider the CBA in deciding the motion to dismiss as it is not a proper subject of judicial notice and the Amended Complaint does not refer to it. <u>See</u> Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").[11] Instead, the Complaint alleges that "the defendant has a policy and practice of retaining" a portion of the service charges. Am. Compl. ¶ 8. Although it is questionable whether this claim would survive summary judgment, the facts as alleged in the Complaint state a plausible unjust enrichment claim.

Consequently, Defendant's motion to dismiss Count IV is DENIED.

### 5. Count V

In Count V, Plaintiffs assert that as a result of Defendant's unlawful failure to remit the entire proceeds of food

---

[11]The Court declines to convert Defendant's Motion to Dismiss into a motion for summary judgment.

and beverage service charges to the food and beverage servers,

Defendant is liable to Plaintiffs under Chapter 388.  Am. Compl.

Count V.  Whether Plaintiffs have stated a plausible claims turns

on a question of statutory interpretation – whether an employee

may recover under H.R.S. §§ 388-6, 388-10, and 388-11, for the

failure of a hotel to distribute service charges to employees

when the hotel did not make disclosures required by H.R.S.

§ 481B-14.[12/]

### i.  Legal Framework

The Court has diversity jurisdiction over this case

pursuant to the Class Action Fairness Act, 28 U.S.C.

§ 1332(d)(2).  See Am. Compl. ¶ 2.  In Davis II, the Hawaii

Supreme Court addressed whether employees have standing to

enforce § 481B-14 through § 480-2(e), but declined to consider

whether §481B-14 is enforceable through §§ 386-6, 388-10, and

388-11 because "it [was] beyond the scope of the certified

question."  228 P.3d at 308 n.12.  Because the instant issue

raises a question not yet decided by the Hawaii Supreme Court,

this Court, "sitting in diversity, must use [its] best judgment

to predict how the Hawaii Supreme Court would decide [the]

issue."  Burlington Ins. Co. v. Oceanic Design & Constr., Inc.,

---

[12/]Because this statutory question is at issue in Plaintiffs'
Motion for Summary Judgment, the Court will also address the
arguments made in the parties' summary judgment briefing related
to the statutory interpretation issue here.

383 F.3d 940, 944 (9th Cir. 2004) (alterations in original) (internal quotations omitted).

The Hawaii Supreme Court instructs that "[w]hen construing a statute, the starting point is the language of the statute itself." State v. Batson, 53 P.3d 257, 259 (Haw. 2002) (internal quotation omitted). A court "must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." Id. (internal quotations omitted). When statutes appear to relate to the same subject matter, the Hawaii Supreme Court uses a three-step approach to interpret those statutes.

> First, legislative enactments are presumptively valid and should be interpreted [in such a manner as] to give them effect. Second, [l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another. Third, where there is a "plainly irreconcilable" conflict between a general and a specific statute concerning the same subject matter, the specific will be favored. However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored.

Batson, 53 P.3d 257, 259 (alterations in original) (internal quotations and citations omitted).

The Hawaii Supreme Court has explained: "It is a cardinal rule of statutory interpretation that, where the terms of a statute are plain, unambiguous and explicit, we are not at

liberty to look beyond that language for a different meaning. Instead, our sole duty is to give effect to the statute's plain and obvious meaning." <u>T-Mobile USA v. Cnty. of Hawaii Planning Comm'n</u>, 104 P.3d 930, 939-40 (Haw. 2005) (internal quotations omitted).

In Count V, Plaintiffs seek to recover unpaid service charges pursuant to H.R.S. § 388-6, titled "Withholding of wages."  Section 388-6 provides that:  "No employer may deduct, retain, or otherwise require to be paid, any part or portion of any compensation earned by any employee except where required by federal or state statute or by court process or when such deductions or retentions are authorized in writing by the employee."[13/]  Chapter 388 defines wages, in relevant part, as

---

[13/]Defendant asserts in a footnote of its reply supporting its motion to dismiss that because Plaintiffs' union agreed that the Hotel could keep seven percent of the banquet service charges, there is an authorization in writing that "dooms [Plaintiffs'] claim."  Def.'s Reply at 3 n.1.  As discussed earlier, the Court cannot consider the CBA in deciding this Motion to Dismiss.  The Court declines to convert the Motion to Dismiss to a motion for summary judgment (which would have required notice of the Court's intention and an opportunity for the parties to supplement the record).  In any event, the Court has previously rejected this argument in <u>Wadsworth</u>.  "[I]f under state law a waiver of rights is permissible, 'the CBA must include clear and unmistakable language waiving the covered employee's state right for a court to even consider whether it could be given effect.'"  <u>Wadsworth</u>, 2010 WL 5146521, at *8 (quoting <u>Valles v. Ivy Hill Corp.</u>, 410 F.3d 1071, 1076 (9th Cir. 2005)).  The Court specifically concluded that although § 388-6 appears to contain a partial waiver provision, "Defendants have not come forth with any evidence that there has been any clear and unmistakable waiver in the CBA as they are required to if they seek to assert a party has waived a state-law right."  <u>Id.</u>

follows:

> "Wages" means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis of calculation. . . . but shall not include tips or gratuities of any kind, provided that for the purposes of section 388-6, "wages" shall include tips or gratuities of any kind.

H.R.S. § 388-1.

"Any employer who fails to pay wages in accordance with [Chapter 388] without equitable justification" is liable to the unpaid employee for twice the amount of the unpaid wages. H.R.S. § 388-10. Section 388-11 provides an employee or class of employees with a cause of action to recover unpaid wages.

Pursuant to § 481B-4, if a person violates a provision of Chapter 481B, the person is deemed to have engaged in an unfair method of competition. One such provision, § 481B-14, requires that:

> Any hotel or restaurant that applies a service charge for the sale of food or beverage services shall distribute the service charge directly to its employees as tip income or clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees.

### ii. The Parties' Arguments

Defendant argues that Count V does not state a

---

at *14. Here too, Defendant has not shown that there has been a clear and unmistakable waiver in the CBA.

plausible claim because Plaintiffs have no "inchoate right" to service charges and "if they have a claim to [service charges], it could only be by virtue of H.R.S. §[]481B-14." Def.'s MTD Mem. at 13. Defendant asserts that consequently, if Plaintiffs cannot assert a claim under § 481B-14, there is nothing to remedy and a claim under Chapter 388 cannot stand. <u>Id.</u> Defendant asserts that improperly retained service charges are not "compensation earned," and that instead, service charges are property of the hotel that imposes them in contrast to tips. Def.'s Opp'n at 6. Defendant elaborates that the CBA contains the amount of service charges Plaintiffs are entitled to receive, and thus that amount is the only service charges that Plaintiffs "earned," and that "[a]ny payments above that are not earned," but "a penalty imposed by H.R.S. §[]481B-14." <u>Id.</u> Defendant relies heavily on the legislative history of § 481B-14. Def.'s MTD Mem. at 7-14. Defendant asserts, <u>inter alia</u>, that because the legislature initially intended to amend Chapters 387 and 388, but chose to ultimately add a new section regarding service charges in Chapter 481B, § 481B-14 is enforceable exclusively through Chapter 480. <u>Id.</u> at 10-11. Defendant avers that Plaintiffs erroneously rely on the title of H.B. No. 2123, the bill that eventually became § 481B-14, which is "Relating to wages and Tips of Employees." Def.'s Reply at 11-13. Defendant argues that the title is insignificant because the Hawaii

Legislative Drafting Manual indicates that each bill gets a title and that titles should not be amended. <u>Id.</u> at 11.

Plaintiffs point out that "section 388-1 defines 'wages' as '<u>compensation</u> for labor services rendered by an employee,' including, for purposes of § 388-6, 'tips or gratuities of any kind.'" Pls.' Reply at 3. Plaintiffs assert that, therefore, service charges that must be distributed as "tip income," "plainly mean" the same thing as "compensation earned" as used in § 388-6. <u>Id.</u> Plaintiffs assert that the plain language of the statutes renders a resort to legislative history unnecessary, and that in any event, the legislative history supports Plaintiffs' interpretation of the statute. <u>Id.</u> at 8. Plaintiffs aver that the title of H.B. No. 2123, "Relating to Wages and Tips of Employees," is "pivotal," because Article III, section 15 states that: "No law shall be passed except by bill. Each law shall embrace but one subject, which shall be expressed in its title." <u>Id.</u> at 8-9. "Given the title of the law and this mandate of the Hawaii Constitution that the title express the law's subject, it is impossible to see how this Act was not intended to protect the wages and tips of employees." <u>Id.</u> at 9.

Plaintiffs additionally contend that the title supports that § 481B-14 and § 388-6 can be read <u>in pari materia</u>. <u>Id.</u> Plaintiffs assert that "[s]imply put, § 481B-14 deals with distribution of 'tip income' and § 388-6 deals with the

withholding of wages and other compensation, including tips," and thus the two provisions deal with similar subjects.  Id. Plaintiffs further contend that if the legislature did not intend for employees to be able to bring an action seeking payment of service charges under § 388-6, there would no reason for the final version of § 481B-14 to require that, where a clear disclosure is not made, the service charge be distributed "directly to its employees as tip income. . . ."  Id. at 10. Plaintiffs assert this is "especially so" because the phrase "as tip income" was added after the proposed bill had been moved to Chapter 481B.  Id.

### iii. Application

        Again, the Court considered this identical issue in an order issued today in Wadsworth.  Both Defendant and Plaintiffs are represented by the same counsel in Wadsworth, and the parties have not made any arguments that were not made in that case.  The Court will adopt its reasoning in that case as its reasoning here.  See Wadsworth, Civ. No. 08-00527 ACK-RLP, Order Denying Defendants' Motion to Dismiss, Granting Defendants' Request to Stay Proceedings as Modified, and Administratively Closing this Case.  In sum, the Court found that pursuant to the plain language of §§ 388-6, 388-10, 388-11, and 481B-14, employees can recover service charges that a hotel imposed without making a clear disclosure that the charges were not distributed to

employees as tips or wages.  Because § 481B-14 and § 388-6
address the same subject matter, compensation of employees, the
statutes can be read in pari materia, _i.e._, applied with
reference to each other.  Defendant's argument that the Court
must ignore the title of H.B. No. 2123 is not persuasive.
Significantly, after noting the title of H.B. No. 2123 was
"Relating to Wages and Tips of Employees," the Hawaii Supreme
Court stated that "although <u>we believe the title is instructive</u>
in that it appears to reflect the legislature's concern that
employees may not always be receiving the service charges imposed
by their employers, we do not believe it is dispositive of the
issue of whether the legislature intended to afford Employees
standing to sue for HRS § 481B-14 violations."  <u>Davis II</u>, 228
P.3d at 313 (emphasis added).  Although the title is not
dispositive of the issue whether the two provisions here consider
the same subject matter, it, along with the Hawaii Supreme
Court's discussion in <u>Davis II</u>, provide further support for the
Court's conclusion that the statutes both refer to employee
compensation and thus can be read in pari materia.

     Section 481B-14 requires hotels to distribute service
charges to employees as "tip income."  Section 388-6 provides
that employers cannot retain "compensation earned" by employees
and § 388-1 provides that, for purposes of Chapter 388,
"'[w]ages' means <u>compensation</u> for labor or services rendered by

an employee . . . for the purposes of section 388-6, 'wages' shall include tips or gratuities <u>of any kind</u>."  (emphasis added). Employees earn "tip income" that is distributed from service charges made without the requisite disclosure by serving at the relevant events.  This "tip income" qualifies as "compensation earned" under § 388-6, and thus is recoverable pursuant to § 388-10, which provides for penalties against "[a]ny employer who fails to pay wages in accordance with [Chapter 388] without equitable justification," and § 388-11, which provides a cause of action to recover unpaid wages.[14]

Because under Hawaii law the Court need not look past the plain language, it is unnecessary to consult the legislative history of § 481B-14 here.  Nonetheless, the Court alternatively holds that the legislative history, as interpreted by the Hawaii Supreme Court in <u>Davis II</u>, allows Plaintiffs to recover for unpaid service charges imposed without the requisite disclosure set forth in § 481B-14, through a claim brought pursuant to §§ 388-6, 388-10, and 388-11.

In <u>Davis II</u>, the Hawaii Supreme Court performed an in depth review of the legislative history of § 481B-14, and

---

[14]At the hearing, Defendant asserted that the CBA provided Defendant with an equitable justification for retaining a portion of the service charges.  Again, the Court cannot consider the CBA in deciding this Motion to Dismiss.  Nonetheless, the CBA would not provide an equitable justification for violating state law; Defendant could have complied with both the CBA and state law by making the requisite disclosures.

determined that "[i]n sum, the legislative history of H.B. No. 2123 indicates that the legislature was concerned that when a hotel or restaurant withholds a service charge without disclosing to consumers that it is doing so, <u>both employees and consumers can be negatively impacted</u>." <u>Davis II</u>, 228 P.3d at 314 (emphasis added). This Court agrees with Judge Gillmor's analysis in <u>Davis I</u>, that:

> The legislative history of section 481B-14 reflects a desire to prevent service workers from being deprived of tip income. To the extent that the legislative history of section 481B-14 is relevant to the question of whether employees may sue for unpaid wages under section 388-6 based on violations of section 481B-14, that legislative history, as interpreted by the Hawaii Supreme Court in <u>Davis</u>, provides support for the idea that employees may do so.

<u>Davis I</u>, 2011 WL 3841075, at *8 (internal citations omitted).

Defendant's Motion to Dismiss with respect to Count V is DENIED.

## **CONCLUSION**

For the foregoing reasons the Court (1) GRANTS in part and DENIES in part Defendant's Motion to Dismiss, and (2) GRANTS Defendant's request to stay the case as modified.

Specifically, Counts I, II, and III, to the extent Count III seeks recovery for an implied contract between Defendant and Plaintiffs, are DISMISSED.

The Court orders a stay of all proceedings pending a

decision by the Hawaii Supreme Court on the question of law certified to it by Judge Kobayashi in <u>Villon v. Marriot Hotel Services, Inc.</u>, CV-08-00529 LEK-RLP, Doc. No. 130 (Oct. 12, 2011), and <u>Rodriquez v. Starwood Hotels & Resorts Worldwide, Inc.</u>, CV-09-00016 LEK-RLP, Doc. No. 139 (Oct. 12, 2011). The Clerk of Court is directed to administratively close this action without prejudice to any party. The closing is administrative only and thus has no effect on the procedural or substantive rights of any party or any limitations period. Any party may move to reopen the case after the Hawaii Supreme Court rules, and the parties shall promptly inform this court in writing of the disposition in Judge Kobayashi's case, at which time the stay will be automatically dissolved if not earlier. The instant order will not go into effect until after the Hawaii Supreme Court rules on the question of law certified to it in <u>Villon</u> and <u>Rodriquez</u>.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 2, 2011.



_Alan C. Kay_

Alan C. Kay
Sr. United States District Judge

<u>Kyne, et al. v. The Ritz-Carlton Hotel Company, L.L.C.</u>, Civ. No. 08-00530 ACK-

RLP: Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, Granting Defendant's Request to Stay Proceedings as Modified, and Administratively Closing this Case.